**WO**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Physicians Surgery Center of Chandler,

          Plaintiff,

v.

Cigna Healthcare Incorporated, et al.,

          Defendants.

No. CV-20-02007-PHX-MTL

**ORDER**

Before the Court is Defendants Cigna Healthcare Inc., Cigna Health and Life Insurance Co., Connecticut General Life Insurance Co., and Cigna Healthcare of Arizona's (collectively, "Cigna") Motion to Dismiss (the "Motion"). (Doc. 16.) This Motion is fully briefed and was discussed at oral argument. The Court resolves the Motion as follows.

## I.     BACKGROUND

Plaintiff Physicians Surgery Center of Chandler ("PSCC") operates in Arizona and is led by a group of physicians specializing in many kinds of surgeries. (Doc. 1 ¶¶ 16–17.) During all relevant times, Cigna acted either as a healthcare insurer or "third party administrator" of various employers' healthcare plans, which includes processing and paying claims under various healthcare insurance policies. (*Id.* ¶¶ 4–10.) Cigna offers health insurance plans that differentiate between coverage for medical treatment provided by "(i) in-network providers who have negotiated discounted rates with the insurer, and (ii) out-of-network providers." (*Id.* ¶ 18.) PSCC is an out-of-network provider and has no

negotiated rates with Cigna. (*Id.* ¶ 19.) Nonetheless, PSCC provided, and continues to provide, medical services to Cigna subscribers. (*Id.* ¶ 20.) Cigna's plans allow subscribers to receive healthcare from out-of-network providers like PSCC. (*Id.* ¶ 21.) Many of these plans are governed by the Employee Retirement Income Security Act ("ERISA"). (*See, e.g.*, *id.* ¶¶ 12, 32, 38.)

PSCC "discloses to all of its patients who are Cigna subscribers that PSCC is an out-of-network provider." (*Id.* ¶ 22.) Before PSCC treats a patient, it engages Medical Practice Solutions ("MPS"), its medical billing company, to "ascertain a patient's eligibility for care and verify the patient's plan benefits." (*Id.* ¶ 23.) MPS first uses intake information provided by the patient's referring medical provider to create a "Benefits/Pre Authorization Verification" form for each surgical procedure. (*Id.* ¶ 24.) MPS then contacts Cigna by telephone to obtain more information to evaluate the patient's eligibility for services. (*Id.* ¶ 25.) During this call, Cigna does not provide any information that PSCC could use to predict how much Cigna will pay, or not pay, for the services it renders for the patients. (*Id.* ¶ 26.) After this information collection process, MPS reviews the data and determines whether the patient is eligible for surgical services and, if so, the surgical procedure is scheduled. (*Id.* ¶ 27.)

On the day of the surgical procedure, PSCC collects a "surgical deposit" from the patient and "requires that all patients who are Cigna subscribers sign multiple documents whereby the subscriber agrees to be personally responsible for all charges." (*Id.* ¶¶ 28–29.) For example, one form that all patients must sign, entitled "Conditions of Service," contains a provision regarding "Assignment of Insurance or Health Plan Benefits to the Facility." (*Id.* ¶ 30.) That form states that the "undersigned assigns and hereby authorizes . . . direct payment to the facility of all insurance and plan benefits otherwise payable to/or on behalf of the patients for this facility and for these outpatient services, at a rate not to exceed the facilities regular charges." (*Id.*) Another form that PSCC requires all patients to sign is entitled "Facility Fee Information." (*Id.* ¶ 31.) In relevant part, the Facility Fee Information form provides, "Assignment of Benefits: I hereby authorize

payment directly to [PSCC] the benefits payable to me, but not to exceed the balance of the charges for this period of outpatient services." (*Id.*) PSCC also requires patients to sign a standardized form entitled "Assignment of ERISA Benefits and Rights, Appointment of Representative." (*Id.* ¶ 32.) That form assigns the patient's ERISA rights and plan benefits including "any legal process relating to a claim submitted on my behalf for health insurance benefits." (*Id.*)

After the surgical procedure, MPS submits the claim to Cigna. (*Id.* ¶ 33.) PSCC and Cigna then agree on the terms of payment. (*Id.* ¶ 34.) After, MPS attempts to calculate the amount of the patient's co-pay or deductible remaining due at the time the claim was submitted, and once that amount is determined, MPS seeks payment of that amount from the patient. (*Id.*) "As a condition of final settlement and payment of a claim, Cigna . . . requires PSCC to agree to refrain from billing for services provided but not paid for by Cigna."[1] (*Id.* ¶ 35.) If an agreement is made, PSCC will not engage in balance billing, but if not, "then MPS will attempt to collect the balance due from the patient." (*Id.*)

In October 2018, PSCC received a letter from Cigna that it had "conducted an internal audit and determined that PSCC had damaged Cigna in an amount of $777,482.41 by allegedly engaging in 'fee forgiveness.'" (*Id.* ¶ 36.) Cigna alleged that PSCC engaged in fee forgiveness "by not consistently billing Cigna subscribers their full out-of-network cost share responsibility . . . and/or balance amounts." (*Id.* ¶ 37.) The letter also noted that "a flag has been placed that will deny claims" until Cigna "can verify that the affected customers have paid their applicable cost share and balance amounts per their benefit agreement," and "Cigna will continue to deny claims until [PSCC] can establish proof of payments by patients to [Cigna's] satisfaction." (*Id.* ¶ 38.) Cigna has therefore denied all claims submitted by PSCC based on this fee forgiveness policy.[2] (*Id.* ¶ 39.) PSCC alleges that it "does not engage in 'fee forgiveness' as PSCC

---

[1] This process is also known as "balance billing." (*Id.* ¶ 35.)

[2] Cigna purportedly bases its fee forgiveness policy on language in many of its benefits plans that exclude from coverage charges for which subscribers are not billed or for which they are not obligated to pay. (*Id.* ¶ 40.) *See also N. Cypress Med. Ctr. Operating*

1   understands Cigna to define the term" and Cigna has withheld these payments "to create
2   leverage against PSCC for the amount Cigna is claiming pursuant to its internal audit."
3   (*Id.* ¶¶ 42–43.) As of August 2020, PSCC alleges that Cigna has "improperly withheld
4   approximately $5.6 million dollars," which has not been paid and remains due. (*Id.*
5   ¶¶ 44–45.) PSCC then filed the instant action. (Doc. 1.) Cigna soon thereafter filed the
6   Motion. (Doc. 16.)

7   **II.    LEGAL STANDARD**

8          To survive a motion to dismiss, a complaint must contain "a short and plain
9   statement of the claim showing that the pleader is entitled to relief" such that the
10  defendant is given "fair notice of what the . . . claim is and the grounds upon which it
11  rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 545, 555 (2007) (quoting Fed. R. Civ. P.
12  8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint does not suffice "if it
13  tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*,
14  556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal under Rule
15  12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of
16  sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police*
17  *Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint, however, should not be dismissed
18  "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of
19  the claim that would entitle it to relief." *Williamson v. Gen. Dynamics Corp.*, 208 F.3d
20  1144, 1149 (9th Cir. 2000).

21         In deciding motions to dismiss, the court must accept material allegations in the
22  complaint as true and construe them in the light most favorable to the plaintiff. *North Star*
23  *Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983). "Indeed, factual
24  challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the
25  allegations under Rule 12(b)(6)." *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th

26
27  *Co., Ltd. v. Cigna Healthcare*, 952 F.3d 708, 711 (5th Cir. 2020), cert. denied, 141 S. Ct.
28  1053 (2021) ("Cigna interpreted this language as its refusal to countenance a provider's
    'fee forgiveness,' on the ground that such practices desensitize insureds to the higher cost
    of out-of-network medical care.").

Cir. 2001). Additionally, review of a Rule 12(b)(6) motion is "limited to the content of the complaint." *North Star Int'l*, 720 F.2d at 581.

## III.   DISCUSSION

PSCC asserts nine claims for relief. The first four are derivative claims brought on behalf of Cigna's health plan members as their alleged assignee: Count One – "Failure to Properly Pay Benefits in Violation of ERISA, 29 U.S.C. § 1132(a)(1)(B)"; Count Two – "Breach of Fiduciary Duties of Loyalty and Due Care Under ERISA, 29 U.S.C. § 1132(a)(3)"; Count Three – "Failure to Provide Full and Fair Review Under ERISA"; and Count Four – "Breach of Contract." (Doc. 1 ¶¶ 46–74.) The remaining counts are brought as direct claims in PSCC's own capacity: Count Five – "Breach of Duty of Good Faith and Fair Dealing"; Count Six – "Unjust Enrichment"; Count Seven – "Violation of Arizona's Prompt Pay Statute"; Count Eight – "Consumer Fraud in Violation of A.R.S. § 44-1521 et seq."; and Count Nine – "Conversion." (*Id.* ¶¶ 75–111.) Cigna moved to dismiss each claim for a failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 16.)

### A.   Federal Derivative Claims

Cigna makes several arguments that the derivative claims fail to state plausible claims for relief. (Doc. 16.) First, Cigna argues that the derivative claims fail because PSCC has not pleaded specific plan language. (*Id.* at 3–4.) Cigna then argues that, even if PSCC alleged the plan language, Counts One through Three cannot proceed because PSCC did not exhaust the administrative remedies under the ERISA plans at issue. (*Id.* at 4–5.) Next, an "anti-assignment" provision in certain ERISA and non-ERISA policies, Cigna argues, precludes PSCC from suing as an alleged assignee of "those Cigna plan members whose plan includes an anti-assignment provision." (*Id.* at 5–7.) Cigna finally argues that Counts Two and Three must be dismissed because PSCC has an adequate remedy under Count One and cannot seek duplicative relief. (*Id.* at 7–8.) PSCC contends that these arguments are meritless, and, at this stage, each derivative claim should proceed. (Doc. 19.)

As a threshold matter, PSCC contends that it has standing to bring these derivative claims through its patients' assignments. (*See* Doc. 1 ¶¶ 28–32.) The Court agrees. *See Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1289 (9th Cir. 2014) ("As a non-participant health care provider, Spinedex cannot bring claims for benefits on its own behalf. It must do so derivatively, relying on its patients' assignments of their benefits claims."). PSCC has alleged the operative assignment language. These allegations are sufficient, at this stage, to plausibly assert derivative standing. If Cigna discovers that assignment language limits PSCC's ability to pursue certain claims, it can raise that argument in a later motion. *See Simi Surgical Ctr., Inc v. Connecticut Gen. Life Ins. Co.*, No. 2:17-CV-02685-SVW-AS, 2018 WL 6332285, at *4 (C.D. Cal. Jan. 4, 2018). With that in mind, the Court will address each argument in turn.

1.      **Specific Plan Language**

PSCC's first cause of action is for violation of ERISA § 502(a)(1)(B). (Doc. 1 ¶¶ 46–51.) That section provides, in relevant part, that "[a] civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "To state a claim under § 502(a)(1)(B), a plaintiff must allege facts that established (1) the existence of an ERISA plan as well as (2) the provisions of the plan that entitle it to benefits." *Reiten v. Blue Cross of California*, No. 2:19-cv-05274-AB-AFMx, 2020 WL 1032371, at *2 (C.D. Cal. Jan. 23, 2020) (citation omitted). "A plan is established if a reasonable person 'can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.'" *Id.* (citation omitted). "Accordingly, a plaintiff who brings a claim for benefits under ERISA must identify a specific plan term that confers the benefit in question." *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1155 (C.D. Cal. 2015) (internal quotation marks omitted). Indeed, a Ninth Circuit panel recently affirmed a district court's finding that a plaintiff failed to state a claim because it did not "identify: (i) any ERISA plan . . . ; or (ii) any

plan terms that specify benefits that the defendants were obligated to pay but failed to pay." *Glendale Outpatient Surgery Ctr. v. United Healthcare Servs., Inc.*, 805 Fed. App'x 530, 531 (9th Cir. 2020). That court affirmed dismissal because the deficiencies were "exacerbated" by the plaintiff's decision "to lump 44 separate events . . . into a single set of generalized allegations." *Id.*

Cigna argues that PSCC "made no attempt to identify any of the plans at issue or establish an entitlements [sic] to benefits under those plans." (Doc. 16 at 3.) In response, "PSCC concedes it has not pled specific plan language that [it] did not possess, but [argues] that does not justify outright dismissal at the pleading stage." (Doc. 19 at 2.) PSCC points to one out-of-circuit case to support this position—*Innova Hospital San Antonio, Ltd. Partnership v. Blue Cross*, 892 F.3d 719 (5th Cir. 2018). In *Innova*, a plaintiff failed to plead specific plan language, even after the district court gave it a chance to fix that pleading deficiency. *Id.* at 724. The plaintiff argued that it could not plead that language because the insurers had the plans at issue and would not respond to its discovery requests. *Id.* In their amended complaint, the plaintiff outlined its efforts to obtain plan documents from the insurers. *Id.* at 725. Ultimately, internet research yielded two plans, which the plaintiff used to plead representative plan language in the amended complaint. *Id.* Along with that representative language, the plaintiff outlined plausible allegations to show there was a denial of ERISA benefits but the district court found that to be insufficient. *Id.* at 729–30. The Fifth Circuit reversed and found that these allegations were enough to survive a motion to dismiss. *Id.* at 730–31. The court reasoned that "ERISA plaintiffs should not be held to an excessively burdensome pleading standard that requires them to identify particular plan provisions in ERISA contexts when it may be extremely difficult for them to access such plan provisions." *Id.* at 728.

*Innova* is inapposite to this case. Nowhere in the Complaint does PSCC outline its efforts to obtain plan documents from Cigna. Although PSCC has outlined other allegations to aid its ERISA claims, it concedes it has not pleaded specific plan language

1   or identified which patients are governed by which plans.[3] Without that information,

2   PSCC cannot state a claim under Counts One, Two, or Three. *See Glendale Outpatient*

3   *Surgery Ctr.*, 805 Fed. App'x at 531. If PSCC seeks refuge in *Innova*'s "exception" to

4   that pleading requirement, it must detail its efforts to obtain such documents in an

5   amended complaint. The Court agrees with *Innova*'s principle that an insurer cannot hide

6   behind these plans that are in its control but then turn around to argue that a plaintiff has

7   failed to plead specific language from those plans it will not share. If PSCC obtains only

8   some, but not all, of the plans at issue, pleading that representative plan language would

9   help it state a plausible claim for relief. On the other hand, if Cigna does not provide any

10  plan, "the Court will permit these allegations to be made 'on information and belief.'"

11  *Almont Ambulatory Surgery Ctr., LLC*, 99 F. Supp. 3d at 1159. The Court therefore

12  grants the Motion on Counts One, Two, and Three. But, as explained below, PSCC will

13  be granted leave to amend to cure these deficiencies.

14                           **2.      Exhaustion**

15          Cigna next argues that PSCC's Counts One through Three should be dismissed for

16  failure to plead exhaustion of administrative remedies. (Doc. 16 at 4–5.) In general,

17  "before ERISA participants or beneficiaries can bring suit to recover plan benefits, they

18  must exhaust a plan's internal claims procedure." *Mack v. Kuckenmeister*, 619 F.3d 1010,

19  1020 (9th Cir. 2010). Although ERISA plaintiffs must exhaust their administrative

20  remedies absent an exception, the Court agrees with PSCC that it is premature to resolve

21  this issue at the motion to dismiss stage.

22          "ERISA exhaustion . . . is traditionally pled as an affirmative defense." *Norris v.*

23  *Mazzola*, No. 15-cv-04962-JSC, 2016 WL 1588345, at *6 (N.D. Cal. Apr. 20, 2016)

24  (collecting cases). "No binding authority establishes whether an ERISA plaintiff must

25  affirmatively plead exhaustion of administrative remedies . . . ." *Methodist Hosp. of S.*

26  _____

27  [3] Apparently, about two months after PSCC filed its Complaint, it produced an Excel spreadsheet to Cigna of unpaid claims, "which includes information pertaining to 749 claims for services that [PSCC] provided to 249 unique patients and dates of services." (Doc. 16 at 4.) This information also does not appear in the Complaint. If PSCC thinks alleging this information would help clarify its ERISA claims, then it may put it in an amended complaint.

28

*California v. Blue Cross of California*, No. CV 09-5612 GAF (JCX), 2011 WL 13186107, at *5 (C.D. Cal. Mar. 8, 2011). The Supreme Court, however, has addressed this issue in other areas. *See Jones v. Bock*, 549 U.S. 199 (2007). In *Jones*, the Court explained that a plaintiff, suing under the Prison Litigation Reform Act ("PLRA"), need not negate an affirmative defense in his complaint. *See id.* at 212, 216 (concluding that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints"). The Court reasoned that given "the PLRA does not itself require plaintiffs to plead exhaustion, such a result 'must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.'" *Id.* at 217 (citation omitted).[4]

After *Jones*, a Ninth Circuit panel held that a motion to dismiss an ERISA denial-of-benefits claim for failure to exhaust administrative remedies should be treated as an unenumerated motion to dismiss. *See Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1088 (9th Cir. 2012). This allowed courts to "rely on evidence outside of the pleadings" and "resolve disputed issues of fact." *Norris*, 2016 WL 1588345, at *5. Later, the Ninth Circuit in *Albino v. Baca*, sitting *en banc*, faithfully applied *Jones* to overrule the circuit's previous rule on how to treat a failure to plead exhaustion. 747 F.3d 1162 (9th Cir. 2014) (*en banc*). *Albino* held that "a failure to exhaust is more appropriately handled under the framework of the existing rules than under an 'unenumerated' (that is, non-existent) rule." *Id.* at 1166. The court reasoned that treating exhaustion this way better comports with Supreme Court precedent and the Federal Rules of Civil Procedure. *Id.* Thus, the court held that a failure to exhaust "is an affirmative defense that the defendant must plead and prove." *Id.* (citation omitted).[5]

---

[4] Importantly here, "[i]n ERISA cases, administrative exhaustion is not a statutory pleading requirement, but a court-created affirmative defense." *Hendricks v. Aetna Life Ins. Co.*, No. CV19-06840-CJC(MRWX), 2019 WL 9054346, at *3 (C.D. Cal. Nov. 7, 2019).
[5] Although *Albino* did not explicitly overrule *Bilyeu*, it overruled several other decisions that followed *Bilyeu*'s same holding. *See Albino*, 747 F.3d at 1169, 1171. Thus, other courts agree that *Albino* "implicitly overruled prior cases such as *Bilyeu*." *Tawater v. Health Care Serv. Corp.*, No. CV 18-47-GF-BMM, 2018 WL 6310280, at *6 (D. Mont. Dec. 3, 2018) (collecting cases).

1    District courts therefore have recognized that *Albino*'s reasoning "applies to

2 failure to exhaust in the ERISA context." *Tawater*, 2018 WL 6310280, at *6 (collecting

3 cases). With that holding governing the ERISA context, the Court rejects Cigna's

4 contention that PSCC must plead exhaustion in its Complaint. *See Rivera v. Peri & Sons*

5 *Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) (noting that plaintiffs "ordinarily need not

6 plead on the subject of an anticipated affirmative defense") (internal quotation marks

7 omitted). This Court therefore agrees with several other courts that the appropriate time

8 to address exhaustion issues is at the summary judgment stage. *See Albino*, 747 F.3d at

9 1171; *see also Russell v. CVS Caremark Corp.*, No. CV-16-00284-PHX-PGR, 2017 WL

10 1090677, at *3–4 (D. Ariz. Mar. 23, 2017).

11    To be sure, *Albino* left open the possibility that courts can still address this issue at

12 the motion to dismiss stage in "the rare event that a failure to exhaust is clear on the face

13 of the complaint." 747 F.3d at 1166. The facts here do not suggest that is the case.

14 Whether a plaintiff properly exhausted administrative remedies turns on the plan

15 language. *See Mack*, 619 F.3d at 1020. As the Ninth Circuit has noted, "a claimant need

16 not exhaust when the plan does not require it." *Spinedex Physical Therapy USA Inc. v.*

17 *United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1299 (9th Cir. 2014). To determine

18 whether a plan requires exhaustion, a court looks to whether it "contains language which

19 could reasonably be read as making optional the administrative appeals process." *Id.* As

20 mentioned above, this Court, and PSCC, do not have access to evaluate the plan language

21 at issue. Without this plan language, the Court cannot decide at this stage of the

22 proceedings that this is a "rare event" in which a failure to exhaust appears on the face of

23 the complaint.

24    Because the Court cannot decide the exhaustion issue at this point, it need not

25 address the parties' arguments about futility. (*See* Doc. 19 at 7–8; Doc. 24 at 4–5.) The

26 Court therefore denies this aspect of the Motion. *See Puget Sound Surgical Ctr., PS v.*

27 *Aetna Life Ins. Co.*, No. C17-1190JLR, 2018 WL 4852625, at *6 (W.D. Wash. Oct. 5,

28 2018).

### 3.    Anti-Assignment Provision

As explained above, PSCC has adequately alleged standing to file its derivative claims through assignment. (*See* Doc. 1 ¶¶ 29–32.) Cigna, however, argues that even if that is true, "many of Cigna's ERISA and non-ERISA policies include an 'anti-assignment' provision that expressly precludes the member from assigning his or her right to benefits under the plan, including any legal causes of action, to a third party." (Doc. 16 at 5.) PSCC responds by noting that it has alleged proper assignments and it is premature to address the anti-assignment provision argument without analyzing the specific plan provisions. (Doc. 19 at 8–12.) Cigna then, in its Reply, clarified that "Cigna did not request the Court to dismiss specific ERISA claims based on anti-assignment provisions; it demonstrated that the presence of anti-assignment provisions in many of the plans is yet another reason to require plaintiff to meet its pleading burden by identifying the ERISA plans at issue." (Doc. 24 at 6.)

The Court agrees with Cigna insofar that the absence of the plans make it difficult for this Court to analyze whether the alleged anti-assignment provisions deprive PSCC to sue in a derivative capacity. *See Emergency Physicians of St. Clare's, LLC v. Horizon Blue Cross Blue Shield of New Jersey*, No. CV 19-12112, 2020 WL 2079286, at *3 (D.N.J. Apr. 30, 2020) ("Plaintiff's failure to identify the specific plans or policies that are controlling is also problematic in that Defendant cannot determine whether its relevant policies contained anti-assignment clauses."). Although the Court has already addressed that PSCC's failure to plead specific plan language is due in part to a lack of access to those documents, "anti-assignment language will generally not defeat standing at the motion to dismiss stage." *NAMDY Consulting, Inc. v. Anthem Blue Cross Life & Health Ins. Co.*, No. 18-CV-03243-SJO (MRWx), 2019 WL 1034320, at *4 (C.D. Cal. Jan. 15, 2019). It would be inappropriate here to address an anti-assignment argument because this Court does not have access to these provisions and such an analysis would hinge on the interpretation of each provision. *See Almont Ambulatory Surgery Ctr., LLC*, 99 F. Supp. 3d at 1150–51. Most importantly, because "Cigna did not request the Court

to dismiss specific ERISA claims based on anti-assignment provisions," the Court need not address the efficacy of this argument now.[6] (Doc. 24 at 6.)

### 4.      Counts Two and Three

Cigna's final argument as to PSCC's federal derivative claims argues that Counts Two and Three must be dismissed because PSCC has an adequate remedy under Count One and cannot seek duplicative relief. (*See* Doc. 16 at 7–8.) PSCC brings Counts Two and Three under ERISA § 502(a)(3) for Breach of Fiduciary Duties and Failure to Provide Full and Fair Review. (*See* Doc. 1 ¶¶ 57, 64.) It contends that "[p]leading in the alternative this way is appropriate." (Doc. 19 at 12.) Thus, according to PSCC, Counts Two and Three survive the Motion. (*Id.*)

Section 502(a)(3) provides that a plan participant, or valid assignee, may bring a civil action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3). Because § 502(a)(3) "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy," relief is not available under § 502(a)(3) "where Congress elsewhere provided adequate relief for a beneficiary's injury." *Varity Corp. v. Howe*, 516 U.S. 489, 512, 515 (1996). "Thus, a claimant may not bring a claim for denial of benefits under § [502](a)(3) when a claim under § [502](a)(1)(B) will afford adequate relief." *Castillo v. Metro. Life Ins. Co.*, 970 F.3d 1224, 1229 (9th Cir. 2020). The Ninth Circuit has clarified that claims under § 502(a)(1)(B) and § 502(a)(3), however, "may proceed simultaneously so long as there is no double recovery." *Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 961 (9th Cir. 2016) (as amended); *see also Castillo*, 970 F.3d at 1229. As highlighted in *Moyle*, this approach comports with the Federal Rules of Civil Procedure, which requires that "[a] pleading that states a claim for relief must contain . . . a demand for the relief sought,

---

[6] The Court does not express a view on PSCC's waiver argument because Cigna did not move "to dismiss specific ERISA claims based on anti-assignment provisions." (*See* Doc. 19 at 10–12.)

which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3).

PSCC acknowledges that it intends to plead these causes of actions "in the alternative," which is procedurally proper. (Doc. 19 at 12.) As other courts have noted, the more appropriate timing to address this argument is at some point beyond the pleading stage. *See, e.g.*, *Langemo v. Blue Cross of Idaho Health Serv., Inc.*, No. 1:19-CV-370 WBS, 2021 WL 1238370, at *6 (D. Idaho Mar. 30, 2021) ("[T]he court is not prepared at this early stage of litigation to determine whether or not recovery under 29 U.S.C. § 1132(a)(1)(b) alone would provide appropriate and adequate relief for plaintiff."); *see also Smith v. Cigna Health & Life Ins. Co.*, No. 3:20-CV-624-SI, 2021 WL 1895234, at *2 (D. Or. May 11, 2021). PSCC is therefore permitted to proceed in this fashion so long as there is no double recovery. *See Moyle*, 823 F.3d at 961.

PSCC also contends that, contrary to Cigna's arguments, Count Two has been plausibly alleged. (*See* Doc. 19 at 4–6.) Even if Count Two was not dismissed for failing to plead specific plan terms, there are still deficiencies that PSCC must cure before alleging a plausible claim for relief. "A plaintiff asserting fiduciary misconduct under § [502](a)(3) must allege 'both (1) that there is a remediable wrong, *i.e.*, that the plaintiff seeks relief to redress a violation of ERISA or the terms of a plan, and (2) that the relief sought is appropriate equitable relief.'" *Talbot v. Reliance Standard Life Ins. Co.*, No. CV-14-00231-PHX-DJH, 2018 WL 10419233, at *19 (D. Ariz. Feb. 7, 2018), aff'd, 790 F. App'x 129 (9th Cir. 2020) (citation omitted). First, it is not clear what equitable relief PSCC is seeking. It only alleges entitlement "to damages and equitable, injunctive and declaratory relief." (Doc. 1 ¶ 61.) PSCC gives no indication of what specific relief this would entail. Relying on these legal conclusions is improper at the pleading stage. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676–79 (2009). Second, PSCC has not demonstrated what remediable wrong exists to the plan's subscribers. Because PSCC is the assignee of its patients' § 502(a)(3) claims, it can only state a claim insofar as those subscribers have a remediable wrong. *See, e.g.*, *Caulley v. Interprise/Sw. Interior & Space Design, Inc.*,

No. 3:20-CV-03077-X, 2021 WL 2376720, at *3 (N.D. Tex. June 10, 2021) ("But [the assignee] fails to demonstrate how the [subscriber] could have brought its claim under section [502](a)(3) as a result of [the fiduciary's] alleged violation."). Third, to the extent that PSCC seeks to pursue its § 502(a)(3) claim for violating the plans' terms, that raises similar issues raised above that cannot be addressed without the Court being aware of those terms. *See Smith v. Cigna Health & Life Ins. Co.*, No. 3:20-CV-624-SI, 2021 WL 1895234, at *2 (D. Or. May 11, 2021) (allowing a § 502(a)(3) claim to proceed only after finding that an amended complaint "adequately alleges a violation of the plan's terms"). For these reasons, the Court will allow PSCC leave to amend to cure these deficiencies and finds this as an additional basis to dismiss Count Two.

As a final point, Cigna argues that PSCC "has requested monetary damages in Counts Two and Three," which is not an available remedy under § 502(a)(3). (Doc. 16 at 8 (citing Doc. 1 ¶¶ 61, 66).) The Court agrees in part. Generally, "monetary relief is improper under ERISA § 502(a)(3)." *Meadows of Wickenburg Inc. v. United HealthCare Ins. Co.*, No. CV-20-01285-PHX-SPL, 2020 WL 6290472, at *3 (D. Ariz. Oct. 27, 2020). The Supreme Court in *CIGNA Corp. v. Amara*, in dicta, left open the possibility that certain monetary remedies may still be pursued. 563 U.S. 421, 441–43 (2011). For example, certain "surcharge" remedies possibly fall within the scope of the term "appropriate equitable relief." *Id.* at 442. The Ninth Circuit has noted that monetary compensation is not necessarily barred as a potential remedy "as long as the claim is brought by a beneficiary against a plan fiduciary for losses resulting from a trustee's breach of duty or to prevent a trustee's unjust enrichment." *McGlasson v. Long Term Disability Coverage for All Active Full-Time & Part-Time Emps.*, 161 F. Supp. 3d 836, 844 (D. Ariz. 2016) (citing *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 950 (9th Cir. 2014)). Here, PSCC only asks for "damages" and does not specify what kind of monetary relief it seeks. As mentioned below, PSCC will be given leave to amend and must clarify what form of damages it seeks to collect under § 502(a)(3). The Court therefore grants the Motion as to Count Two for failure to state a claim.

- 14 -

1

### 5.      Conclusion

PSCC's Counts One, Two, and Three fail to state a claim based on the lack of pleading specific plan language. Count Two is also dismissed for failing to state a claim because it has not plausibly alleged a remediable wrong or clarified its equitable relief. As explained below, the Court will allow PSCC to cure these deficiencies in an amended complaint. Because the Court has dismissed the only federal causes of actions in PSCC's Complaint, it must now determine whether it will continue to exercise supplemental jurisdiction over PSCC's remaining state-law claims.

### B.      State Claims

PSCC initially brought its ERISA claims under federal question jurisdiction and its state-law claims through supplemental jurisdiction. (*See* Doc. ¶¶ 11–13.) The threshold requirement for supplemental jurisdiction under 28 U.S.C. § 1367(a) is not satisfied because there is no longer a federal question and there is no diversity jurisdiction. A district court has discretion to decline exercising supplemental jurisdiction over state-law claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). When exercising its discretion, the Court considers the interest in "economy, convenience, fairness, and comity." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (citation omitted). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

The Court finds that the values of economy, convenience, fairness, and comity do not favor retention of this matter. These factors may weigh toward exercising supplemental jurisdiction if there is considerable procedural advancement, such that it would be a waste of judicial resources or unfair to the parties to remand the matter. *See, e.g.*, *In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1491 (9th Cir. 1985). There has not been considerable procedural advancement here. It is also true that the balance of factors may weigh in favor of exercising discretion to retain the claims when considerable time

was expended on the state-law claims before dismissing the federal law claims. *See Schneider v. TRW, Inc.*, 938 F.2d 986, 994 (9th Cir. 1991) (holding that it was not an abuse of discretion to retain pendent claims after about thirty-two months). Although the Court has limited familiarity with the facts and issues presented in this case, those considerations align more with the "usual case in which all federal-law claims are eliminated before trial" than the exceptional circumstance that would override considerations of federalism and comity. *Cohill*, 484 U.S. at 350 n.7. The Court therefore declines to exercise supplemental jurisdiction over Plaintiff's state-law claims (Counts Four through Nine) and will deny as moot the Motion's arguments as to the state-law claims.[7] *See Gilliam v. Galvin*, No. CV 19-00127 JAO-RT, 2019 WL 3604592, at *3–5 (D. Haw. Aug. 6, 2019) (dismissing the only federal cause of action, declining to exercise supplemental jurisdiction over the remaining state-law claims, and granting the defendants' motion to dismiss with leave to amend).

### C.   Leave to Amend

PSCC asks this Court to grant leave to amend if it grants the "Motion in whole or in part." (Doc. 19 at 17.) Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). "The power to grant leave to amend . . . is entrusted to the discretion of the district court, which 'determines the propriety of a motion to amend by ascertaining the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility.'" *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (quotation omitted). District courts properly deny leave to amend if the proposed amendment would be futile or the amended complaint would be subject to dismissal. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214

---

[7] The Court therefore need not address the parties' preemption arguments. (*See* Doc. 19 at 16; Doc. 24 at 12–13.) It is worth noting, however, that it may be helpful to the Court for preemption purposes if PSCC clarifies in its amended complaint whether its state-law claims are asserted with respect to ERISA plans, non-ERISA plans, or both.

(9th Cir. 1988).

Here, amendment would not be futile. PSCC can amend its complaint to include its efforts to obtain access to the plan documents at issue. If PSCC obtains only some, but not all, of the plans at issue, pleading that representative plan language would help it state a plausible claim for relief. On the other hand, if Cigna does not provide any plan, "the Court will permit these allegations to be made 'on information and belief.'" *Almont Ambulatory Surgery Ctr., LLC*, 99 F. Supp. 3d at 1159. As the Court noted above, PSCC can also further allege information that it has since provided Cigna in a spreadsheet but failed to include in its Complaint. As for Count Two specifically, PSCC can bolster its allegations as to what remediable wrong exists and clarify its equitable relief, including "damages." The Court therefore grants PSCC's request for leave to amend.

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED granting in part** and **denying as moot in part** Cigna's Motion to Dismiss (Doc. 16) as follows:

1.   Cigna's Motion as to the ERISA derivative claims (Counts One, Two, and Three) is granted for failure to state a claim, with leave to amend.

2.   Cigna's Motion as the remaining state-law claims (Counts Four, Five, Six, Seven, Eight, and Nine) is denied as moot.

**IT IS FINALLY ORDERED** that PSCC shall file an amended complaint, if it chooses to do so, no later than August 20, 2021. If PSCC fails to file an amended complaint within this deadline, the Clerk of the Court shall enter judgment dismissing the case for the reasons indicated above.

Dated this 23rd day of July, 2021.

*Michael T. Liburdi*

Michael T. Liburdi
United States District Judge